UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JULIO J. VALDEZ, | CASE NO. 4:06CV2994 |
| Plaintiff, | JUDGE PETER C. ECONOMUS |
| | Magistrate Judge George J. Limbert |
| v. | |
| FEDERAL BUREAU OF PRISONS, et al., | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendants. | |

The instant case is before the Court on Defendants Federal Bureau of Prisons, Dr. Michelle Keller, Dr. John Manenti, Mohammad Azam, SHA, and John Doe's (collectively, "Defendants") Motion for Summary Judgment. ECF Dkt. #23. For the following reasons, the undersigned recommends that the Court GRANT the instant motion and DISMISS the instant case in its entirety with prejudice:

**I.    SYNOPSIS OF THE FACTS**

In an earlier order, the Court summarized the pertinent facts as follows:

> Mr. Valdez was convicted on drug conspiracy charges and sentenced on December 21, 2001 to 192 months of incarceration followed by five years of supervised release. Immediately following his conviction, Mr. Valdez was sent to the Federal Detention Center in Milan, Michigan ("FDC-Milan"). On July 18, 2001, a routine test conducted by FDC-Milan medical personnel revealed elevated levels of Glucose, Alkaline Phosphate, and "ALT" in Mr. Valdez's blood.[2] The sample was sent to Garcia Laboratories for further testing which yielded a positive result for Hepatitis A, and Hepatitis C, on July 27, 2001. At some point thereafter, Mr. Valdez was transferred to FCI-Elkton.
>
>> FN2    "ALT" or Alanine Aminotransferase and "AST" or Aspartate Aminotransferase are enzymes found mostly in liver cells. An elevation in the amount of ALT or AST in the blood indicates possible liver damage. See www.cdc.gov and www.hepatitis.abollt.com.

> FCI-Elkton Physician Dr. Manenti ordered additional blood tests to be performed on April 5, 2002 and April 9, 2002. These tests both showed elevated levels of ALT. Approximately one year later, on May 20, 2003, FCI-Elkton Physician Dr. Ross Quinn ordered new blood tests to be performed on Mr. Valdez. This test revealed increases in both ALT and AST levels. He ordered an HCV RNA test to confirm the diagnosis of Hepatitis. This test, conducted on September 5, 2003, substantiated the original diagnosis and revealed that Mr. Valdez presented Hepatitis C Genome Type 1b. Another blood test was conducted in October 2003 showing sustained elevation of both ALT and AST levels. Dr. Ross then initiated the protocol to pursue interferon treatment.[3]
>
>> FN3  The complaint does not clearly set forth the process though [sic] which Mr. Valdez must go before obtaining interferon treatment. It appears that he must undergo a psychological examination and obtain a favorable result, have an Anti-HCV (Hepatitis antibody test) which showed a positive result, demonstrate elevated ALT levels on his past three blood tests, be cleared by a physician, show no contradiction to ribaviron or interferon, have a HCV RNA positive result on a blood test, obtain a liver biopsy, obtain an HCV genotype test, and have his treating physician complete an algorithm for treatment form. That form is reviewed by the Bureau of Prisons Chief of Health Programs who must either approve or disapprove the recommended treatment.
>
> On July 14, 2004, Mr. Valdez was taken to the Salem Community Hospital for a liver biopsy. The sample was sent to the Armed Forces Institute of Pathology which determined that Mr. Valdez had chronic Hepatitis C with marked activity and portal-periportal fibrosis. Some necrosis of the liver was also noted. Several more blood tests were taken showing elevated ALT and AST levels.
>
> Based on this information, FCI-Elkton Physician Michele Keller submitted an Approval for Treatment Form to the Bureau of Prisons on September 23, 2004 recommending that Mr. Valdez begin receiving lnterfereon and Ribaviron treatments. The request was denied with the finding that Mr. Valdez was in the "relatively early disease" stage and suggesting that he complete a drug treatment program and abstain from getting tatoos before reapplying the following year for treatment.
>
> Mr. Valdez wrote a letter to Clinical Director Paul Harvey on June 8, 2006 asking him to "look into [his] situation for further treatment for [his] Hepatitits C." (Compl. Ex. 25) Mr. Harvey replied that Mr. Valdez's enzyme levels were all normal on May 22, 2006 and that he did not need to be treated for Hepatitis C when the enzyme levels show no inflamation. (Compl. Ex. 25.) Mr. Valdez asserts that the defendants have been deliberately indifferent to his serious medical needs, that they have denied him substantive due process by their actions, and that they were grossly negligent in providing appropriate medical care.

ECF Dkt. #4 at 2-3.

## II.  PROCEDURAL HISTORY

On December 15, 2006, Plaintiff filed a complaint pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 383 (1971) and the Federal Tort Claims Act ("FTCA").  ECF Dkt. #1.  On March 8, 2007, the Court *sua sponte* dismissed Plaintiff's *Bivens* claims against the BOP, T.R. Sniezek, PA Bullock,

PA Flatt, and Scott Dodrill and his FTCA claims against all individual defendants. ECF Dkt. #4. On July 16, 2007, Defendants filed an answer. ECF Dkt. #13. On November 28, 2007, the undersigned issued an interim report and recommendation, recommending the dismissal of claims against Dr. Paul Harvey and Dr. Newton. ECF Dkt. #16. The Court adopted the report and recommendation on December 17, 2007. ECF Dkt. #17.

On December 5, 2008, Defendants filed the instant Motion for Summary Judgment. ECF Dkt. #23. The undersigned has granted Plaintiff multiple extensions for filing a response, but as of the filing of this report and recommendation, the Court has not received a response brief. *See* ECF Dkt. ## 26, 28, 29, 30.

### III.    STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party. *Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

## IV.  LAW AND ANALYSIS

### A.  FTCA CLAIM

Defendants first contend that Plaintiff's FTCA claims should be dismissed because he has failed to provide medical expert testimony. ECF Dkt. #23 at 8-9. The undersigned recommends that the Court grant Defendants' motion in this regard because the Court must apply Ohio law under the FTCA and Ohio law requires Plaintiff to present the opinion of a medical expert to support his claim, as discussed below.

The FTCA allows a private individual to sue the United States for damages for torts that its employees commit while acting within the scope of their employment. *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004). This Court can hold the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

In order to determine liability under the FTCA, this Court must refer to the law of the state where the alleged act or omission occurred. 28 U.S.C. 1346(b); *Rayonier Inc. v. United States*, 352 U.S. 315, 318-319 (1957); *Flechsig v. United States*, 991 F.2d 300, 303-304 (6th Cir. 1993).

The Supreme Court of Ohio has held that " Proof of [medical] malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff." *Davis v. Virginian Ry. Co.*, 361 U.S. 354, 357 (Ohio 1960). More recently, the Supreme Court of Ohio acknowledged the additional requirement of expert testimony to establish proximate causation: "Where the alleged negligence involves the professional skill and judgment of a nurse, expert testimony must be presented to establish the

-4-

prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury." *Ramage v. Central Ohio Emergency Serv., Inc.*, 592 N.E.2d 828, 834 (Ohio, 1992). "Failure to establish the recognized standards of the medical community has been fatal to the presentation of a prima facie case of malpractice by the plaintiffs." *Bruni v. Tatsumi*, 346 N.E.2d 673, 677 (Ohio 1976). "Proof of the recognized standards must necessarily be provided through expert testimony. This expert must be qualified to express an opinion concerning the specific standard of care that prevails in the medical community in which the alleged malpractice took place, according to the body of law that has developed in this area of evidence." *Id*. at 677-78.

A "common knowledge exception" to the expert testimony requirement exists where "matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony." *Ramage*, 592 N.E.2d at 833.

The Western District of Pennsylvania has recently considered a case similar to the one at bar under Pennsylvania law. *Jones v. U.S.*, Civil Action No. 05-287, 2008 WL 2367188 at *5(W.D.Pa., June 6, 2008), slip op. The *Jones* court dismissed a federal inmate's medical malpractice suit for failing to provide the testimony of a medical expert because "Courts sitting in medical malpractice cases require detailed expert testimony because a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care." *Id*. at *4-*5. The *Jones* case is persuasive because the rule of law requiring expert testimony in medical malpractice cases in Ohio is similar to the rule in Pennsylvania. Both Ohio and Pennsylvania law require expert testimony in medical malpractice cases to establish breach of a standard of care owed by a medical professional and to establish a causal nexus between that breach and the resulting injury. Compare *Ramage*, 592 N.E.2d 834 with *Toogood v. Rogal*, 573 A.2d 1140, 1149 (Pa. 2003).

Here, Plaintiff has failed to present the testimony of an expert to establish the recognized standard in the medical community that Defendants have breached. Under the clearly articulated rule of law in *Bruni*, dismissal is mandated by the lack of evidence establishing the existence of a

recognized standard of care, a breach of that standard, or a causal nexus between the breach and the alleged injury.  Therefore, the undersigned recommends that the Court DISMISS Plaintiff's FTCA claim in its entirety with prejudice.

### B.     *Bivens* CLAIM

Next, Defendants contend that Plaintiff's *Bivens* claim should be dismissed because: (1) he alleges only medical negligence, not deliberate indifference; (2) there is an extensive history of medical treatment; and (3) his claims are barred by qualified immunity.  ECF Dkt. #23 at 11-14. The undersigned recommends that the Court grant Defendants' motion in this regard.

The Eighth Amendment to the United States Constitution prohibits "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Deliberate indifference requires that the official both know of and disregard an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official violates an inmate's Eighth Amendment rights only when two requirements are met.  First, "the deprivation alleged must be, objectively, sufficiently serious."  *Id*.  (internal citations omitted).  In other words, the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' "  *Id*. quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  In order for a prisoner to succeed on a claim based on a prison official's failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834, citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  Second, it must be shown that a prison official acted with "deliberate indifference" in failing to protect the inmate.  *Farmer*, 511 U.S. at 834.  A prison official acts with deliberate indifference when he knows that an inmate faces a substantial risk of serious harm and the official disregards that risk by failing to take reasonable measures to abate it.  *Id.* at 837.  The prison official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*  It is sufficient for an inmate to show that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate.  *Id.* at 842.

First, Defendants contend, Plaintiff does not allege that Defendants acted with deliberate indifference.  ECF Dkt. #23 at 11 citing ECF Dkt. #1 at ¶¶81-96.  However, the portion of the

complaint upon which Defendants rely in making this argument constitutes Plaintiff's FTCA claim. In paragraphs 62-80, Plaintiff alleges that Defendants acted with deliberate indifference in failing to provide adequate medical care.  *See* ECF Dkt. #1 at ¶¶62-80.  This portion of the complaint constitutes Plaintiff's *Bivens* claim and clearly alleges deliberate indifference as opposed to negligence.  Therefore, the undersigned recommends that the Court reject Defendants' first argument for dismissal.

Second, Defendants contend that Plaintiff's medical records show that he has received extensive medical care that should result in the dismissal of his *Bivens* claim.  The undersigned believes that this argument is more persuasive.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385  (6th Cir. 2004) quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir.1976).

Here, Plaintiff has received extensive medical treatment, and his own complaint acknowledges that fact – and at one point he alleges that "Defendants were conducting massive amount [sic] of blood work on the plaintiff. . ."  *See* ECF Dkt. #1 at  ¶¶20-5, 28-34, 36-40, 46-49. Further, Defendants have provided a declaration from Dr. Manenti.  ECF Dkt. #23, Attach. 2.  Dr. Manenti attests that he has access to patient records at FCI Elkton.  *Id*. at ¶1.  He further attests that Plaintiff received treatment in compliance with the Guidelines for the Prevention and Treatment of Viral Hepatitis.  *Id*. at ¶¶ 2- 9.  Specifically, Dr. Manenti attests that Plaintiff received regular blood tests to monitor his ALT and AST levels, a liver biopsy, an HCV RNA test, and screening for depression.  *Id*. at *¶¶*9A-II.  However, Plaintiff was denied for a Hepatitis C treatment program due to the disease's relatively early stage, Plaintiff's need for drug treatment, and his continued tattooing.  *Id*. at ¶9JJ.  After that time, Plaintiff reported that he was doing "fairly well" and had no complaints.  *Id*. at ¶¶9OO-PP.  Plaintiff never completed the drug treatment program.  *Id*. at ¶10. Based on the foregoing, the undersigned recommends that the Court find that Plaintiff has not alleged or presented facts to establish a genuine issue of material fact pertaining to his allegations of Defendants' violations of his Eighth Amendment rights.  The undersigned further recommends

that the Court dismiss Plaintiff's *Bivens* claims accordingly.[1]

### V.   CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant case in its entirety with prejudice.


Date: August 18, 2009　　　　　　　　　　　　 *s/ George J. Limbert*
　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. LIMBERT
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[1] Based on this recommendation, it is not necessary to address Defendants' claim of qualified immunity.